UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL MOTORS CORPORATION,<br><br>　　　　Plaintiff,<br>　v.<br>MANLY OLDSMOBILE-GMC, INC.,<br><br>　　　　Defendant.<br>_____/ | No. C-07-0233 JCS<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF DIVERSITY JURISDICTION (FRCP 12(b)(1)) AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FRCP 12(b)(6)) [Docket No. 7]** |

## I.   INTRODUCTION

General Motors ("GM") and Manly Oldsmobile-GMC, Inc. ("Manley") are parties to a General Motors Corporation Dealer Sales and Service Agreement ("Dealer Agreement"). GM has sued Manley for injunctive relief and specific performance of the Dealer Agreement, alleging that Manley has violated the agreement by operating a Mitsubishi dealership on its premises without GM's approval. Manley brings a Motion to Dismiss for Lack of Diversity Jurisdiction (FRCP 12(b)(1)) and for Failure to State a Claim upon Which Relief Can Be Granted (FRCP 12(b)(6)) ("the Motion"). The Court determines that the Motion is suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is DENIED.

## II.   BACKGROUND

GM filed its complaint on January 12, 2007. It alleges that GM and Manley are parties to a Dealer Agreement which requires that Manley, as a GM dealer, obtain prior authorization from GM to sell competing vehicle brands on its premises. Complaint at 3 (citing Dealer Agreement, Article 4.4.2). The reason for this requirement is set forth in the Dealer Agreement as follows: "Because General Motors distributes its Products through a network of authorized dealers operating from

approved locations, those dealers must be appropriate in number, located properly, and have proper facilities to represent and service General Motors Products competitively . . . ." Complaint at 2 (quoting Dealer Agreement, Article 4.1). GM further alleges that Manley has violated the agreement by operating a Mitsubishi dealership on the premises without first obtaining GM's approval. Complaint at 4. In doing so, GM alleges, Manley has damaged GM "in an amount that greatly exceeds the sum of $75,000" by reducing sales of new GM vehicles at the Manley dealership and throughout the local marketplace and by "diluting the GM brands and reputation in the local marketplace." *Id*.

GM asserts two claims in its complaint: 1) a claim for preliminary or permanent injunction enforcing Manley's covenants under the Dealership Agreement, including an order requiring Manley to immediately cease operation of the Mitsubishi dealership on its premises; and 2) a claim for specific performance seeking the same relief as the previous claim. GM invokes federal jurisdiction under 28 U.S.C. § 1332(a)(1) on the basis of diversity.

Manley brings a motion to dismiss on the grounds that: 1) the complaint fails to allege specific facts that show that the $75,000 amount-in-controversy requirement is met and therefore, there is no diversity jurisdiction; 2) GM is not entitled to equitable relief – either in the form of injunction or specific performance – because GM has not shown that money damages are inadequate; and 3) GM should have exhausted its administrative remedies before it filed this action by pursuing remedies before the California New Motor Vehicle Board ("NMVB").

**III. ANALYSIS**

    **A.   Existence of Diversity Jurisdiction**

Manley argues that there is no jurisdiction under 28 U.S.C. § 1332(a)(1), governing diversity jurisdiction, because GM has failed to allege facts that would give rise to a good faith belief that it might be entitled to a judgment of at least $75,000. Accordingly, Manley seeks dismissal of the action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. GM counters that Manley's position fails because it has not demonstrated to a legal certainty that the amount in controversy is less than $75,000.00 or that GM's invocation of diversity jurisdiction is in bad faith. The Court concludes that GM is correct.

Pursuant to 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  It is undisputed that the parties to this action are citizens of different states.  Therefore, diversity jurisdiction exists if GM has met the amount-in-controversy requirement.  The amount in controversy requirement is generally determined by the amount claimed in the complaint, and this amount "controls if the claim [was] made in good faith."  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  However, a district court may be justified in dismissing the action where it appears to a legal certainty that the actual claim is less than the jurisdictional amount.  *Id.*; *see also Lowdermilk v. U.S. Bank Nat'l Ass'n*,  --- F.3d --- , 2007 WL 678221, at * 3 (9th Cir. Mar. 2, 2007) ("if the complaint alleges damages in *excess* of the federal amount-in-controversy requirement, then the amount-in-controversy requirement is presumptively satisfied unless it appears to a legal certainty that the claim is actually for less than the jurisdictional amount").  Where the relief sought is equitable, the amount in controversy requirement may be met where the value of the injunction to the plaintiff meets or exceeds the statutory minimum.  *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001) (citing *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) for the proposition that the test for determining the amount in controversy is the "pecuniary result to either party which the judgment would directly produce").

The legal standard that applies to motions to dismiss under Rule 12(b)(1) depends upon whether the attack is facial or factual.  Where, as here, a defendant brings a facial challenge, that is, a challenge to the court's subject matter jurisdiction based on the allegations in the complaint rather than extrinsic evidence, the court conducts an inquiry that is "analogous to a 12(b)(6) motion."  *Roberts v. Corrothers*, 812 F.2d 1173, 1178 (9th Cir. 1987).  Accordingly, the court must consider the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Laurence v. United States*, 1993 WL 266657 (N.D. Cal. 1993) (discussing difference between burden under Rule 12(b)(1) for facial and factual attacks on subject matter jurisdiction).  A complaint should only be dismissed for lack of subject matter jurisdiction where "it is clear that plaintiff will be unable to prove any set of facts which would entitle him to recover."  *Great River*

3

*Indus., Inc. v. The Public Serv. Comm'n of Puerto Rico*, 131 F. Supp. 2d 265, 268 (Dist. P.R. 2001) (holding that standard for facial attack under Rule 12(b)(1) is "virtually identical" to standard under Rule 12(b)(6)).

Here, the allegations in the complaint do not establish to a legal certainty that the amount-in-controversy requirement cannot be met, that is, that there is no set of facts that could be proven that would result in equitable relief which would have a value to GM (or Manley) of $75,000.00 or more. To the contrary, assuming GM's allegations are true and drawing all reasonable inferences in its favor, the value of the relief sought – an order precluding Manley from selling competing vehicles on its premises – could well be worth more than $75,000.00 to GM.   Nor is there anything in the Complaint that suggests that GM's allegation regarding the amount in controversy was made in bad faith.  Therefore, the Court concludes that dismissal under Rule 12(b)(1) for lack of diversity jurisdiction is not warranted.

**B.      Sufficiency of Plaintiff's Claims**

Manley seeks dismissal of GM's claims under Rule 12(b)(6) on the basis that GM fails to state a claim for injunctive relief or specific performance and did not exhaust administrative remedies.  Dismissal of a complaint under Rule 12(b)(6) is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Such a finding may be based upon either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  For purposes of resolving the motion, courts accept all allegations of material fact as true and construe the complaint in the light most favorable to the nonmoving party. *Nat'l Wildlife Fed'n v. Espy*, 4 F.3d 1337, 1380 (9th Cir. 1995).

**1.      Equitable Relief**

Manley asserts that equitable relief is not available because Plaintiff has not alleged facts showing that damages are inadequate.  The Court disagrees.  Whether the Court applies Michigan

4

law or California law,[1] it is well-established that "a valid covenant restricting the use of land may, in a proper case, be enforced by injunction." 27 Michigan Law & Practice, *Remedies*, ch. 6 Injunction, § 144; *see also, Hudson Oil Co. v. Shortstop*, 111 Cal. App. 3d 488, 495 (1980) (holding that it is "established law that contracting parties are free to agree to restrictions on the use of real property . . . and that equitable principles apply to all such contracts . . . and that equity will enforce covenants contained in lease agreements against those who take with notice"). In particular, where a contract includes a covenant restricting the use of real property to preclude sale of a competitor's products on the premises, courts have held that equitable relief may be appropriate because it is often difficult to quantify the amount of harm that results from allowing the property to be used in this way. *See Shell Petroleum Corp. v. Ford,* 255 Mich. 105 (1931) (holding that where defendant breached lease agreement to sell plaintiff's petroleum and instead sold the petroleum of a competitor, injunctive relief was appropriate because it was impossible to determine how much of plaintiff's petroleum would have been sold if defendant had not breached agreement and therefore, there was no adequate remedy at law); *Associated Oil Co. v. Myers*, 217 Cal. 297, 302-303 (1933) (adopting holding of *Shell Petroleum Corp.*). The Court therefore rejects Manley's assertion that GM's claims must be dismissed because equitable relief is unavailable to GM.

### 2. Exhaustion of Administrative Remedies

Manley asserts that GM's claims should because dismissed because GM did not present them first before California's New Motor Vehicle Board ("NMVB"), an administrative body that can resolve certain types of disputes between new vehicle dealers and automobile manufacturers, including disputes relating to franchise terminations. *See* Cal. Vehicle Code §§ 3050, 3060. According to Manley, GM's claims relate to termination of a franchise and therefore fall within the NMVB's authority. GM counters, however, that it does not seek to terminate the Dealer Agreement and that the NMVB has no authority over its claims. Therefore, it argues, there is no exhaustion

---

[1] The Court need not make a choice-of-law determination to resolve the issues raised in Manley's Motion. Accordingly, the Court defers determination of that question to a later stage of the case.

requirement with respect to the claims asserted in this action. The Court concludes that GM is correct

Under California Vehicle Code § 3050(d), the NMVB is authorized to "hear and decide . . . a protest presented by a franchisee pursuant to section 3060 [termination of franchise by dealer], 3062 [establishment of new dealerships or relocation of dealerships], 3064 [obligations of franchisee relating to delivery and preparation of new motor vehicles], or 3065.1 [terms of franchisor incentive programs]." In addition, the NMVB may "[c]onsider any matter concerning the activities or practices of any person applying for or holding a license as a new motor vehicle dealer, manufacturer, manufacturer branch, distributor, distributor branch or representative . . . submitted by any person." Cal. Vehicle Code § 3050(c).

Following creation of the NMVB in 1967, California courts struggled with the scope of the NMVB's authority, and many interpreted the expansive language of Cal. Vehicle Code § 3050(c) to grant broad authority to the NMVB, therefore placing most civil disputes between automobile manufacturers and California dealers within the exclusive jurisdiction of the NMVB. *See, e.g., Yamaha Motor Corp. v. Superior Court*, 185 Cal. App. 3d 1232, 1238-1239 (1986). It has been established in more recent decisions, however, that "[w]hile the Vehicle Code gives the Board statutory authority to hear specific protests by franchisees . . . it does not replace the judiciary with the Board as the forum for litigating over statutory and common law causes of action." *Hardin Oldsmobile v. New Motor Vehicle Board*, 52 Cal. App. 4th 585, 597 (1997). This conclusion is consistent with subsection (e) of California Vehicle Code § 3050, which was added in 1987. That subsection provides as follows:

> (e) Notwithstanding subdivisions (c) and (d), the courts have jurisdiction over all common law and statutory claims originally cognizable in the courts. For those claims, a party may initiate an action directly in any court of competent jurisdiction.

Cal. Vehicle Code § 3050(e).

GM's claims do not involve any of the specific franchisee "protests" enumerated in Cal. Vehicle Code § 3050(d). The Court rejects Manley's assertion that Cal. Vehicle Code § 3060, governing termination of a franchise, applies. GM does not seek to terminate its agreement with Manley but rather, to enforce that agreement. Nor has Manly pointed to any other basis for

6

concluding that GM's claims fall within the limited authority committed to the NMVB to resolve disputes between automobile manufacturers and franchisees. Accordingly, GM is not required to present its claims to the NMVB before asserting them in this Court.

## IV.  CONCLUSION

For the reasons stated above, the Motion is DENIED.

IT IS SO ORDERED.

Dated:  March 12, 2007

                                               JOSEPH C. SPERO
                                               United States Magistrate Judge